IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CYNTHIA L. PETERANGELO, et al,

    Plaintiffs,   : Case No. 3:12-cv-381

 - vs -

              Magistrate Judge Michael R. Merz

STATE FARM FIRE AND CASUALTY
COMPANY,
             :
    Defendant.

## DECISION AND ORDER ON SUMMARY JUDGMENT

  Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 15). Plaintiff filed a Memorandum in Opposition and Cross-Motion for Summary Judgment (Doc. No. 20), Defendant filed a Response to Plaintiff's Memorandum and Motion (Doc. No. 22), and Plaintiffs a Reply (Doc. No. 23).

  The parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) and the case was referred on that basis. (Rule 26(f) Report, Doc. No. 5); (Order Referring Case, Doc. No. 6).

**Statement of Law**

  As of October 15, 2012, the time of the filing of the Complaint in the Greene County Common Pleas Court, Plaintiffs were residents of the State of Ohio. Defendant State Farm Fire and Casualty Company is a corporation organized under the insurance laws of the State of Illinois and maintains its principal place of business in Bloomington, Illinois. (Notice of

1

Removal, Doc. No. 1, PageID 2.) Defendants removed the case to this Court based on diversity of citizenship jurisdiction and on the basis that the amount in controversy exceeds $75,000.[1] 28 U.S.C. §§ 1441(a) and (b) and 1332; *Id.* at ¶¶ 5, 7.

A federal court exercising diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.; In re Akron-Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987). The available sources to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other States. *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989); *accord Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 617 (6th Cir. 1998); *Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.*,

---

[1] Each Plaintiff requests coverage for personal property in the amount of $25,467, thus totaling $76,401. In addition, each plaintiff seeks building damages in the amount of $62,312.58, totaling $186,937.74. (Notice of Removal, Doc. No. 1, PageID 2, ¶ 2.)

223 F.3d 323, 328 (6th Cir. 2000); *Puckett,* 889 F.2d at 1485; *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

Defendant's Motion is made under Fed. R. Civ. P. 56. (Motion for Summary Judgment, Doc. No. 15, PageID 165.)  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) ("On summary judgment," moreover, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.")  "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material  facts. *Alexander v. Caresource,* 576 F.3d 551 (6th Cir.  2009), *citing Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co.*

3

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Martin v. Ohio Turnpike Comm'n.*, 968 F.2d 606 (6th Cir. 1992).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir. 2001). "Materiality is determined by the substantive law claim." *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir. 2000). An issue is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Niemi v. NHK Spring Co., Ltd.,* 543 F.3d 294, 298 (6th Cir. 2008); *Randall v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir. 1994), *quoting Liberty Lobby* , 477 U.S. at 248. Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons-Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir. 2000), *rev'd on other grounds,* 536 U.S. 639 (2002). Thus, a factual dispute which is merely colorable or is not significantly probative will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied* 510 U.S. 976 (1993); *see also, Int'l Union United Auto., Aerospace & Agriculture Implement Workers of America v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir. 1999), *cert. denied* 529 U.S. 1076 (2000).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford and Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby,* 477 U.S. at 252. If, after

sufficient opportunity for discovery, the non-moving party is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322-23.

**Factual Background**

It is uncontested that State Farm issued a Homeowner's Policy to the Plaintiffs collectively, insuring the residence located at 138 E. Routzong Drive, Fairborn, Ohio 45324, effective from July 25, 2011 through July 25, 2012. (Notice of Removal, Doc. No. 1, Exh. A); (Motion For Summary Judgment, Doc. No. 15, PageID 167.)  The home was jointly owned by Cynthia Peterangelo, John Owsiany, and Angela Owsiany, though only Angela Owsiany resided at the home. (Motion For Summary Judgment, Doc. No. 15, PageID 167.)

On November 18, 2011, the property was damaged by fire.  The fire was either an accidental result of Plaintiff Angela Owsiany falling asleep in bed while smoking a cigarette or purposely caused in a suicide attempt. The facts clearly show, however, that Ms. Owsiany attempted suicide by means of a prescription pill overdose at a time simultaneous to the fire and that the fire originated from the mattress.

The insurance policy provided for coverage for "accidental direct physical loss" to the property. These terms however were conditioned on a lack of concealment or fraud on the part of the insured. "This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss." (Motion for Summary Judgment, Doc. No. 15, PageID 168), *quoting* Doc. No. 1-2, Policy, Section I and Section II, CONDITIONS, 2. Concealment or Fraud, PageID 44.

In her initial recorded statement with an adjuster from State Farm, Ms. Owsiany denied that she had attempted suicide on November 18, 2011. Additionally, she misrepresented the type and quantity of pills she took on the day in question.  However, her medical records, later released to State Farm, indicated a diagnosis of a suicide attempt on the date of the fire, as well various prescription pills taken in that attempt. State Farm again examined Ms. Owsiany and she admitted that she had in fact intended to kill herself and that she had underrepresented the amount of drugs she consumed in the attempt because she was embarrassed.

On February 24, 2012, Ms. Owsiany was indicted in Greene County on one count of arson under Ohio Revised Code 2929.02(A)(2) and on one count of aggravated arson under Ohio Revised Code 2929.02(A)(1). The charge of aggravated arson was eventually dismissed and the arson charge was amended to attempted aggravated arson, to which Ms. Owsiany entered a plea of no contest and the court found her guilty.

On April 19, 2012, State Farm advised the Plaintiffs that they were denying the claims relating to the fire loss. The basis for the denial was State Farm's belief that Ms. Owsiany breached the policy when she made material misrepresentations in the course of their investigation regarding her suicide attempt and the quantity/types of pills ingested during the attempt. (Motion for Summary Judgment, Doc. No. 15, PageID 175.) They stated that pursuant to the Concealment and Fraud clause these misrepresentations voided the policy as to all insured. (Doc. No. 1-2, Policy, Section I and Section II, CONDITIONS, 2. Concealment or Fraud, PageID 44.)  This action followed.

**Count One-Breach of Contract**

**Defendant State Farm's denial of the Plaintiff's claims for fire insurance coverage benefits constitutes a breach of contract and they have incurred losses and damages as a result of that breach.**

In Count One, Plaintiffs allege that Defendant State Farm breached their contractual duty when they failed to pay Plaintiffs' coverage benefits under the existing homeowner's policy following a fire at the insured residence. (Complaint, Doc. No. 4 PageID 82.) In support, Plaintiffs argue that they had fully complied with their contractual obligations to State Farm and properly perfected all the conditions necessary for coverage under the policy. *Id*.

In their Motion for Summary Judgment, however, Defendant State Farm contends that they denied the claim because "Ms. [Angela] Owsiany breached the insurance policy State Farm issued to Plaintiffs by concealing or misrepresenting material facts in the course of State Farm's investigation. Under the plain and unambiguous language of the insurance policy, Ms. Owsiany's concealment or misrepresentation of material facts served to void the policy as to all Plaintiffs. Accordingly, State Farm argues it is entitled to summary judgment on Plaintiffs' claims for breach of contract and declaratory judgment." (Motion for Summary Judgment, Doc. No. 15, PageID 165); Doc. No. 1-2, Policy, Sections I and II, Conditions, 2. Concealment and Fraud, PageID 44.

Under Ohio law, "concealment or fraud" conditions to insurance coverage that void a policy for material misrepresentations have been held to be enforceable. *Rainer v. Century Surety Ins. Co.*, 1990 Ohio App. LEXIS 2504 (Ohio App. 4th Dist. 1990) (policy was void when appellant misrepresented her involvement with the fire as well as fraudulently overestimating the loss). "[A] misrepresentation will be considered material if a reasonable insurance company, in

determining its course of action, would attach importance to the facts misrepresented." *Abon Ins. Co. v. Transcon Ins. Co.*, 2005-Ohio-3052, ¶ 82 (Ohio App. 5th Dist. 2005). Materiality is judged by whether the misrepresentation "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 182-84 (2nd Cir. 1984). "Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Rose v. State Farm Fire & Ca. Co.*, 2012 U.S. Dist. LEXIS 117066, *23 (S.D. Ohio 2012), *quoting Abon*, 2005 Ohio 3052 at ¶ 82, *citing Fine*, 725 F.2d at 182-84. A false sworn answer is material if it is calculated either to "discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." *Abon*, 2005 Ohio 3052 at ¶ 82, *citing Fine*, 725 F.2d at 182-84.

The materiality of a misrepresentation is a mixed question of law and fact that should be determined by the trier of fact; however, it "can be decided as a matter of law if reasonable minds could not differ on the question." *Rose*, 2012 U.S. Dist. LEXIS 117066 at *23, *citing Abon*, 2005-Ohio-3052. In determining the appropriateness of summary judgment, the court must consider the question "whether reasonable minds could have differed as to the materiality of any alleged concealment or misrepresentation." *Id*.

Here the actual content of the misrepresentations are not in dispute. In her initial meeting with State Farm Ms. Owsiany denied her suicide attempt and underreported the types and quantity of pills consumed in that attempt. The issue appears to turn on whether or not these misrepresentations were *material* to the investigation. Defendant argues that Ms. Owsiany's statements went directly to the cause and circumstances of the fire and were "material" to the

8

investigation. (Motion for Summary Judgment, Doc. No. 15, PageID 177.) During the initial investigation, in a recorded statement to State Farm Claims Adjuster Christopher Sharon, Ms. Owsiany specifically stated that she was not attempting suicide at the time of the fire. She continued by stating that she had never attempted suicide, that any statement to the contrary would be inaccurate, and that she did not wish to end her life. *Id*. at PageID 170-171. Further, Ms. Owsiany understated the amount of prescription pills she took on the day of the fire, claiming only four ibuprofen and two nerve pills. *Id*. at PageID 171. In addition to the above statements, prior to concluding the meeting, Ms. Owsiany confirmed that everything she had stated to the adjuster was true to the best of her knowledge. *Id*.

However, statements purportedly made by Ms. Owsiany to various medical personnel vary significantly from the recorded statement made to the State Farm Claims Adjuster. The information reflects a suicide attempt, as well as varying descriptions and quantities of substances ingested by Ms. Owsiany just prior to the fire. The medical records, as summarized by Defendant, show notations such as "in an effort to harm herself . . . then set her house on fire," "trying to commit suicide . . . decided to, 'burn herself alive,' by lighting bed sheets on fire," "complaining of suicide attempt . . . and let [sic] her house on fire and would commit suicide," "decided to overdose . . . was smoking in bed and decided to set it on fire," "still having suicidal thoughts . . . and was having thoughts of suicide a month before she set the fire in her bed," and "[r]eports suicidal ideation and attempted to end her life recently via fire." (Motion for Summary Judgment, Doc. No. 15, PageID 172.) In addition, the medical notes show various statements as to the substances taken by Ms. Owsiany, ranging from "2 Clonipin [sic], 4 Ativan, 2 Valium, and 2 Vicodin" to "4 vicodin and 10 klonipin" to "took a bunch of somebody's prescription pills." *Id*.

9

The existing conflict between the medical records and Ms. Owsiany's recorded statement prompted State Farm to conduct an examination under oath ("EUO"). (Motion for Summary Judgment, Doc. No. 15, PageID 173.) It was during the EUO that Ms. Owsiany admitted she had misrepresented facts in her previous statement. *Id*. She admitted that she had in fact attempted suicide on November 18, 2011, and that in contrast to what she had stated previously, she had actually taken approximately 10 Klonopin the day of the fire. *Id*. She maintained that she did not intentionally start the fire, but rather claims it began accidently when she fell asleep while smoking a cigarette. *Id*. at PageID 173-174.

State Farm does not argue in their Motion for Summary Judgment that Ms. Owsiany intentionally started the fire and should be barred from recovery under the policy provision providing coverage only for accidental damages- not intentional loss. Rather, they argue that the misrepresentation regarding her suicide attempt speaks to her intent and whether the fire was part of that suicide attempt. (Motion For Summary Judgment, Doc. No. 15, PageID 174, 176); (Response, Doc. No. 22, PageID 552.)[2] Additionally, Defendant asserts that the amount of pills taken by Ms. Owsiany in furtherance of the suicide attempt was material as it went to her state of mind at the time of the fire, her intention to commit suicide, and to the truthfulness of her statement that fire was an accidental result of falling asleep while smoking a cigarette. (Motion For Summary Judgment, Doc. No. 15, PageID 174, 176); (Response, Doc. No. 22, PageID 552.) As such, both misrepresentations were material to the investigation as they directly related to her intentions at the time of the fire. State Farm concludes that given the facts, there is no genuine issue of material fact, Ms. Owsiany violated the Concealment or Fraud condition of the policy and voided the policy as to all Plaintiffs. As such, State Farm is entitled to summary judgment.

---

[2] "State Farm has not moved for summary judgment on this issue [whether the fire was accidental] because it recognizes there is a genuine issue of material fact whether Plaintiff intentionally set the fire in an attempt to kill herself." (Response, Doc. No. 22, PageID 557.)

10

In their Memorandum in Opposition and Cross-Motion for Partial Summary Judgment, Plaintiffs argue that the misrepresentations were not material to State Farm's investigation. (Cross-Motion, Doc. No. 20, PageID 437.) Specifically, they allege that State Farm was aware of the suicide attempt of November 18, 2011, as well as the overdose, *prior* to Ms. Owsiany's recorded statement. *Id*. In support they assert that the fire was investigated by the Fairborn Police and Fire Departments, as well as a fire investigator for State Farm. All agreed that a cigarette was the cause of the fire. *Id*. at PageID 438, 443. On December 5, 2011, a conversation between State Farm's investigator and the Fairborn Fire Department revealed that a suicide note had been found at the home. *Id*. at PageID 443; *see* Report, Doc. No. 20-2, PageID 517. The investigator passed this information along to State Farm. On December 7, 2011, State Farm Claims Adjuster, Mr. Sharon, obtained copies of the Fairborn Police and Fire Departments' investigative reports which included information about the suicide attempt by overdose. *Id*. at PageID 444; see Report, Doc. No. 20-2, PageID 518. This occurred *prior* to Sharon's conversation and recorded statement of Ms. Owsiany on December 8, 2011.[3] Additionally, Plaintiffs note that in his deposition, Sharon stated that Ms. Owsiany had been cooperative and did not obstruct or prejudice the investigation in any way. *Id*. at PageID 444-445, Depo of Sharon, Doc. No. 20-2, PageID 537-539.

Plaintiffs further address some of the medical notes. They first address that of EMT Christopher Brock. Brock provided a written statement to the Fairborn Police which contained the phrase that addition to smoking in bed, Ms.Owsiany may have "done more (to start the fire)." *Id*. at PageID 441. During deposition however Brock stated that the words in parentheses were

---

[3] A deposition of Mr. Sharon submitted as evidence by Plaintiffs indicate that Mr. Sharon may not have even been involved as an adjuster in this claim case until the suicide note was discovered. "I became involved in this once there was - - once the information came forward about the suicide note. Prior to that it was handled by a claim representative in our large loss unit." (Cross-Motion, Doc. No. 20-2, PageID 530.)

not the words of Ms. Owsiany, but rather his interpretation. *Id*. at PageID 524. He further stated that "done more" could have been indicative of something else, such as having taken additional pills in the attempt to end her life. *Id*. at 525.  Further, Ms. Owsiany was evaluated by Dr. Mohan, an emergency room physician. *Id*. at PageID 442. The doctor diagnosed her as suffering from a "suicide attempt by drug ingestion" and makes no note of purposely setting a fire in furtherance of this attempt. *Id*.  Once transferred to the psychiatric unit the medical records reflect erratic comments and behavior.  Specifically in notes reflecting Ms. Owsiany's state of confusion and going back and forth between admissions and denials of starting the fire as part of the suicide attempt.  *Id*. at PageID 443.  Plaintiffs further cite to an evaluation conducted by Dr. Massimo De Marchiss who they have designated as an expert witness in this case. *Id*. at PageID 446.  Dr. De Marchiss reviewed the medical records from the hospital, the incident reports from the fire, EMT Brock's written statement, as well as conducted his own psychological testing of Ms. Owsiany. *Id*.  He concluded that she was impaired at the time of the fire as a result of having ingested various substances related to her suicide attempt and that she did not intentionally start the fire. *Id*.

Finally Plaintiffs note that there was no financial gain to be had from this fire. Ms. Owsiany was forthcoming in discussing her financial situation, her lack of employment, as well as her past substance abuse problems. (Cross-Motion, Doc. No. 20, PageID 440.)[4]  She was cooperative with State Farm throughout the investigation in this regard.

---

[4] Plaintiffs also argue various positions arising from the accidental loss coverage provision, the cooperation provision, as well as the intentional acts provision. Defendant counters that these claims are not relevant to the issues before the Court. State Farm did not move for summary judgment dismissal under the Intentional Acts provision of the policy. (Response, Doc. No. 22, PageID 546.) Nor did they deny the claim based on the cooperation condition of the policy. *Id*.  The issue before the Court is State Farm's Motion to Dismiss based specifically on the Concealment or Fraud Condition. *Id*.

Defendant counters that an internal State Farm note stating that the police report indicated a suicide attempt did not demonstrate that State Farm had "<u>absolute knowledge</u>" of whether Ms. Owsiany was attempting suicide or by what method. (Response, Doc. No. 22, PageID 553.) The note only serves to establish that State Farm had a basis to investigate the possible suicide attempt, and in turn the possibility that the fire was started intentionally, not that they should pursue that line of investigation. In her recorded statements the following day, Ms. Owsiany denied such attempt and further denied the existence of a suicide note. It was not until State Farm received the medical records that Ms. Owsiany admitted her actions to State Farm. *Id*. Additionally, they argue that the misrepresentation need not ultimately prove to be significant to the disposition of the claim, only that it be reasonably relevant to the insurer's investigation at the time. *Id*. at PageID 554.  As such, Mr. Sharon's statements that the misrepresentations did not obstruct or prejudice the outcome of the investigation do not lend themselves to support of Plaintiffs' claim. Rather they note, they were responses to rather broad questions posed to Sharon, not the narrow specific issue of whether or not the misrepresentations made by Ms. Owsiany were material to State Farm's investigation. *Id*. at PageID 555.

Defendant cites to *Nationwide Mutual Ins. Co. v. Skeens*, 2008-Ohio-1875 (2nd Dist Ct. App. 2008) in support of their position on summary judgment. They argue that the case is analogous to their position as the court held, despite the insurer's independently uncovering the truth regarding the misrepresentations, that the misrepresentations were material to the investigation because "they 'reasonably might have affected' the insurer's course of action." *Id*. at PageID 550-551, *citing Skeens*, 2008-Ohio-1875, ¶ 11.  The Court does not find that this case definitively decides the Motion. In *Skeens* the insurance company became aware of misrepresentations after the fact. There is evidence presented here that puts into dispute whether

13

State Farm had the relevant evidence before the misrepresentations.

In considering the Defendant's Motion for Summary Judgment, as well as Plaintiffs' Cross-Motion for Summary Judgment, respectively in favor of the non-moving party on each Motion, the evidence presents a sufficient disagreement as to whether or not the misrepresentations were material and the effect it may have had on the policy. "'[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the facts misrepresented." *Long v. Insurance Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982). . . Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation *at the time*. See *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 182-84 (2d Cir. 1984) . . . " *Abon Ins. Co. v. Transcon Ins. Co.*, 2005-Ohio-3052, ¶ 82 (Ohio App. 5th Dist. 2005) (emphasis added). Therefore, the question turns on when State Farm was aware of the suicide attempt and given that time frame, were the misrepresentations reasonably relevant to the investigation at the time? Were the statements relevant and germane to the investigation as it was proceeding? Did the misrepresentations discourage, mislead or deflect the investigation in any area that might seem, at that time, a relevant or productive area to investigate? The purpose of this decision is not to resolve the factual issues, but to determine if there are factual issues to be tried. On that basis the Court denies both Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment on the Count One.

**Count Two-Bad Faith**

**As a result of Defendant State Farm's bad faith refusal to pay for the covered fire losses and damages incurred by the Plaintiff's, they are entitled to an award of compensatory and punitive damages against the Defendant.**

In their second claim Plaintiffs argue that in addition to the breach of contract Defendant State Farm acted in bad faith in their refusal to pay the fire insurance coverage benefits as that decision was not predicated upon circumstances that lend themselves to a reasonable justification for such denial. (Complaint, Doc. No. 4, PageID 82.)

State Farm moves for summary judgment on the basis that Plaintiffs' sole reason for alleging "bad faith" is the denial of the claim. (Motion for Summary Judgment, Doc. No. 15, PageID 180.)  As the policy had become void due to the misrepresentations by Ms. Owsiany, there was no coverage in place. *Id*.

The Court notes that it is clear that Ohio law treats bad faith claims as claims arising in tort:

> "The liability of the insurer in such cases does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. See, e.g. *Ketcham v. Miller* (1922), 104 Ohio St. 3d 372, 136 N.E. 145. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties. See *Battista* [v. *Lebanon Trotting Assn*. (C.A. 6, 1976), 538 F.2d 111, at 117-118]. See, also, *Saberton v. Greenwald* (1946), 146 Ohio St. 414 [32 O.O. 454, 66 N.E.2d 224].  This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort."

*Valente v. University of Dayton*, 689 F. Supp. 2d 910, 923-924 (S.D. Ohio 2010), *quoting Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276 (1983). Thus, "an insurer has a duty to act in good faith toward its insured in carrying out its responsibilities under the insurance policy."

*Smith v. Allstate Insurance Co.*, 2006 U.S. Dist. LEXIS 93998, *26 (S.D. Ohio 2006), *citing Hoskins*, 6 Ohio St. 3d 272 (1983); *see also Rose v. State Farm Casualty Co.*, 2012 U.S. Dist. LEXIS 117066, *33 (S.D. Ohio 2012). This duty includes the handling, processing, and payment of claims. "Bad faith" results when an insurer "fails to exercise good faith in the processing of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Id.*, *quoting Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994). In determining whether the action of the insurer was in bad faith, the crucial inquiry is "whether 'the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial,' not whether the insurance company's decision to deny benefits was correct." *Rose*, 2012 U.S. Dist. LEXIS 117066, at *33.

> On a motion for summary judgment, Ohio law directs courts to assess bad-faith-denial-of-coverage claims from the perspective of what information motivated the insurer's denial. Viewing the evidence in the light most favorable to the insured, courts ask whether "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Sons, Inc. v. Midwestern Indem. Co.*, 65 Ohio St. 3d 621 (1992). An aggrieved insured must respond to the insurer's motion "with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification. . . ." *Id.*

*Smith v. Allstate Indemnity Company*, 304 Fed. Appx. 430, 432 (6th Cir. 2008). "Stripped to the base essentials, the central factual issue in the bad faith claim is whether or not appellee had a reasonable basis to deny appellants' claim." *Smith v. Allstate Insurance Co.*, 2006 U.S. Dist. LEXIS 93998, *32, *quoting Abon, Ltd. v. Transcontinental Ins. Co.*, 2005 Ohio 3052 at *6 (Ohio App. 5th Dist. 2005).

Defendant's sole argument for summary judgment is that as "there is no coverage as a matter of law . . . State Farm is entitled to summary judgment on the bad faith claim." (Motion For Summary Judgment, Doc. No. 15, PageID 180.)  Because the Court is denying both summary judgment motions, as it found that there is a genuine issue of fact as to Court One- whether or not the misrepresentations were material and voided the policy- it likewise follows that the Court deny the summary judgment on the claim of bad faith until the breach of contract claim can be resolved. Defendant's motion for summary judgment on this claim is denied.

> **Count Three-Declaratory Judgment**
>
> **Plaintiffs seek a declaration of rights of the duties, and liabilities of the parties to this action with respect to the fire insurance coverage benefits.**
>
> **As to count one, judgment against Defendant State Farm and an award of compensatory damages in an amount in excess of 25,000.**
>
> **As to Count two, judgment against Defendant State Farm and an award of compensatory damages and an award of compensatory damages in the amount in excess of 25,000**

In addition to partial summary judgment, Plaintiffs "seek a declaration of the rights, duties, and liabilities of the parties to this action with respect to the fire insurance coverage benefits provided under Policy Number 35-68-4977-8, and the Plaintiffs' damages resulting from Defendant State Farm's breach of that insurance agreement, and the Plaintiff's damages resulting from State Farm's bad faith refusal to pay the Plaintiffs' claims for fire insurance coverage benefits." (Complaint, Doc. No. 4, PageID 82).

As to Count One, Plaintiffs seek judgment against Defendant State Farm and an award of compensatory damages in an amount in excess of $25,000, plus prejudgment interest, plus cost

17

of this action. The requested relief as to Count Two is judgment against Defendant State Farm and an award of compensatory damages in an amount in excess of $25,000, plus punitive damages, plus attorney fees, plus prejudgment interest, plus the cost of this action. As for Count Three, Plaintiffs seek judgment against Defendant State Farm and a declaration from the Court that as a result of the November 18, 2011, fire at the Owsiany residence, Plaintiffs are entitled to receive fire insurance coverage benefits under the Policy for the full extent of their losses and damages. In addition in Count Three, Plaintiffs seek a declaration from the Court that State Farm's refusal to pay the Plaintiffs' claims for fire insurance coverage benefits is not predicated on circumstances that establish a reasonable justification for such refusal. *Id*. at PageID 83.

Defendant State Farm argues that there that there is no coverage under the policy as the policy was voided due to material misrepresentations. Plaintiffs counter however that it is "undisputed that a material question of fact remains regarding the value of the contests of the home that were destroyed as a result of this fire." (Cross-Motion, Doc. No. 20, PageID 454.) As such, they are entitled to summary judgment in their favor on the declaratory judgment claim and seek an award of damages for the value of replacement costs. *Id*. Further, they argue they are entitled to summary judgment in their favor on the declaratory judgment claim regarding bad faith as they have demonstrated that State Farm is obligated to provide coverage under the policy. *Id*. at PageID 455.

As Claim Three encompasses both the first and second claims, and is dependent upon those findings, the Court denies Defendant's Motion for Summary Judgment, as well as Plaintiffs' Cross-Motion.

**Conclusion**

For reasons set forth herein, both Defendant's Motion for Summary Judgment and Plaintiff's cross-motion for summary judgment are denied.

April 17, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge
